LOMMER v. SCRANTON-SPRING BROOK WATER SERVICE CO. et al. (AMERICAN OIL CO., Third-Party Defendant).

No. 941.

District Court, M. D. Pennsylvania.

July 20, 1946.

See also 4 F.R.D. 104.

McDonough & Boasberg, of Buffalo, N. Y., and Stark, Bissell & Reifsnyder, of Scranton, Pa., for plaintiff.

Frank J. McDonnell, of Scranton, Pa., for defendant Scranton-Spring Brook Water Service Co.

Welles, Mumford & McGrath, of Scranton, Pa., for defendants Edmund J. Thomas and Ruth T. Thomas.

J. Frank Connolly, of Scranton, Pa., for American Oil Co.

WATSON, District Judge.

This case is a negligence action brought by the plaintiff for the recovery of damages for the death of her husband, George Lommer, by gas asphyxiation. The case was tried before a jury and a joint verdict in the amount of $25,000, on which judgment was entered, was returned by a jury against the defendant, Scranton-Spring Brook Water Service Company, and the third-party defendant, American Oil Company. Both defendant (hereinafter referred to as "The Gas Company") and third-party defendant (hereinafter referred to as "The Oil Company") moved the Court to set aside the verdict and judgment entered thereon, and to enter judgment in favor of the moving party.

From the testimony it appears that the decedent was a truck driver who was en route to Buffalo and made a stop for the night at the wayside restaurant a number of miles outside of Scranton where, in the night, he met his death by gas asphyxiation. The restaurant was formerly a railroad station which was then being used as a restaurant and lunch stand.

In August, 1938, tenant A of the premises made an application for gas service to The Gas Company. The Gas Company maintained a four inch (4") gas main from Scranton to Factoryville, which main was located in the road adjacent to the restaurant, the gas in which was under pressure of a much higher degree than that in urban mains. This main was tapped and

about one hundred and seven feet of three-quarter inch steel pipe was used to make the connection with the restaurant building. The pipe was buried at an average depth of one and one-half feet and laid on a bed of tamped down yellow clay. Forty feet from the point of entry into the house was a "shut-off valve" or curb-box. Some sixteen feet further from the house, or about fifty-six feet from the point where the pipe entered the house, was the point where the leak occurred and from which point the gas seeped along the pipe into the building, causing the death of Lommer and two other occupants of the building. In the cellar of the house was a wing-cock for shutting off the gas and a regulator or governor to cut down pressure. A third part of the installation was the "corporation shut-off" attached to the main, where it was possible to shut off entirely the flow of gas into the one hundred seven foot length of pipe. Over the area in which this pipe was laid was a space used commonly as a driveway and parking space for the trucks and other automobiles.

Tenant A abandoned the place in 1939 and in July or August of that year The Gas Company shut off the gas by means of the "wing valve" located inside the building. Tenant B moved in the next spring, 1940, and requested The Oil Company to install two gasoline pumps and tanks, but did not request a resumption of service with The Gas Company. The Oil Company tanks were in the ground only about three or four months and, in July 1940, they were removed by The Oil Company, the holes being filled with ash fill. The tanks were located close to the course of the gas service pipe running to the building. Tenant B moved out and, while tenant C was in possession of the premises using neither The Oil Company nor The Gas Company fixtures, the accident occurred in November, 1941.

Defendant, Scranton-Spring Brook Water Service Company, contends that there was no evidence of improper construction of the service line from the gas main in the highway to the building, and that there was no evidence that the service pipe was improperly laid so that the weight of vehicular traffic on the surface caused the break in the pipe. There was testimony to the effect that the gas main was not the ordinary low-pressure urban gas main; that The Gas Company had been informed at a considerable time prior to the accident that the service should be shut off, and probably would not be used again for some time; that the gas was not shut off at the main, but at a point within the house in which the accident occurred; and that the shutting off at the main would not have been difficult or costly, but was a simple operation. The instructions to the jury, I believe to have been fair and ample on the finding of negligence, and the jury found that there was negligence on the part of The Gas Company.

Third-party defendant, American Oil Company, also contends that there was no evidence from which the jury could properly have found negligence on its part. There was testimony that when The Oil Company removed their tanks from the premises a pipe, not specifically identified as the gas pipe in question, was seen to have been laid bare, at approximately the location where the pipe broke, allowing the gas to flow into the building; that The Oil Company made no inquiry concerning the pipe; that the holes from which the tanks were removed were closed with ash fill; that ash fill would not support the pipe properly, but would allow the joint to become weakened from the pressure on the surface above. The Court instructed the jury concerning the evaluation of the credibility of witnesses and the definition of negligence, following which the jury found negligence also on the part of the third-party defendant, American Oil Company.

In my opinion, the verdict of the jury was supported by legal evidence, and was proper.

The motion of the defendant, Scranton Spring-Brook Water Service Company, and the motion of the third-party defendant, American Oil Company, to set aside the verdict and judgment are denied.